**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**DAVID D. HARO,**

                **Plaintiff,**

-vs-                                                         **Case No.  3-:04-CV-328**

**NCR CORPORATION,**

                                                           **Judge Thomas M. Rose**
                **Defendant.**

---

**ENTRY AND ORDER GRANTING DEFENDANT'S MOTION TO
COMPEL ARBITRATION (Doc. #5) AND TERMINATING THE CASE**

---

This matter arises from the employment and subsequent termination of Plaintiff David D. Haro ("Haro") by Defendant NCR Corporation ("NCR"). Haro was employed by NCR as a Demand Planner/Marketing Specialist for 5 ½ years.

Haro's First Amended Complaint ("FAC") requests class action certification and includes seven Claims for Relief. Haro's First Claim for Relief is a state law claim for age discrimination. His Second Claim for Relief is a state law claim of "pattern and practice age discrimination." Haro's Third Claim for Relief is a sub-class and/or individual claim for state law race discrimination. His Fourth Claim for Relief is for "federal race section 1981 discrimination" and his Fifth Claim for Relief is a federal claim for "pattern and practice section 1981 and section 1985 conspiracy." Haro's Sixth Claim for Relief is a "state claim relief for wrongful termination in violation of public policy. His Seventh Claim for Relief is a state law claim for misrepresentation.

The certification of a class in this matter has yet to be brought before this Court. However, Haro's FAC alleges that the class he has requested may exceed four hundred former NCR employees who were released from employment between January 2004 and the filing of the FAC on September 13, 2004 due to a purported reduction in force and who were over the age of 40, presumably at the time they were released.

Haro's factual allegations regarding a class do not specifically include members of a protected race. However, some of his Claims for Relief refer to sub-classes who were subjected to race discrimination.

Now before the Court is NCR's Motion to compel arbitration and dismiss the case. (Doc. #5.) As an alternative to dismissing the case, NCR asks that the case be stayed pending arbitration.

NCR's Motion is fully briefed and now ripe for decision. A brief factual background will first be set forth followed by the standard of review and an analysis of the Motion.

## FACTUAL BACKGROUND

When evaluating a motion to compel arbitration, the Court treats the facts as it would when ruling on a motion for summary judgment. *Raasch v. NCR Corporation*, 254 F.Supp.2d 847, 851 (S.D.Ohio 2003). Under the summary judgment standard, the court looks to the pleadings and documentation submitted by both parties. *Id.* The facts and reasonable inferences that can be drawn therefrom are construed in a light most favorable to the non moving-party. *Id.*

In this case, then, the facts and reasonable inferences are drawn from the pleadings and documentation submitted by both parties and are viewed in a light most favorable to Haro.

Haro signed a Mutual Agreement To Arbitrate All Employment Related Claims (the "Arbitration Agreement") as a prerequisite to beginning employment at NCR. (FAC ¶6, Ex. B.) The Arbitration Agreement was signed by Haro on August 30, 1998. (Id.)

As part of the Arbitration Agreement, NCR and Haro "mutually agree[d] that, instead of going to court or a jury" certain disputes would be resolved through final and binding arbitration. (Id.) The Arbitration Agreement excludes only workers compensation and ERISA claims from mandatory arbitration. (Id.) Claims that are subject to mandatory arbitration include, but are not limited to claims for any form of illegal discrimination, claims for improper or unfair treatment or dismissal and all tort claims. (Id.) The Arbitration Agreement also provides that, "No one at NCR has the authority to verbally modify the terms of this Agreement and no written modification will be effective unless it is signed by an NCR attorney. (Id. ¶7.)

Effective November 22, 2002, NCR adopted a personnel practice referred to as "Internal Dispute Resolution ("IDR"). (Id. ¶1.) The IDR policy applies to all non-represented NCR employees in the U.S. who continued their employment or were hired after November 22, 2002 and provides that, if an employment-related dispute occurs between NCR and one of its associates, IDR will be used to resolve the conflict. (Id. ¶¶2, 5.) However, the IDR policy does not apply to challenges to the terms of a company policy or to challenges to an established business/personnel practice. (Id. ¶4.)

The IDR policy has two steps for resolving employment-related disputes. (Id. ¶3.) Step 1 is an internal process using the management structure and chain of command to resolve the

dispute. (Id.) Step 2 is an external process with a "neutral outside arbitrator for a final and binding decision." (Id.) Having set forth the factual allegations relevant to the Motion that is now before the Court, the analysis turns to the standard of review.

## STANDARD OF REVIEW

The Sixth Circuit has repeatedly applied the Federal Arbitration Act ("FAA") to arbitration agreements formed in the employment setting. *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005). The FAA expresses a strong public policy favoring arbitration of a "wide class of disputes" and provides for orders compelling arbitration when one party has "failed, neglected, or refused to comply with an arbitration agreement." *Id.*

The FAA also provides that a written provision evidencing arbitration is enforceable unless grounds exist for revocation of the writing. *Id.* at 377. Grounds for revocation include "generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability…" *Id.* (citing *Cooper v. MRM Investment Co.*, 367 F.3d 493, 498 (6th Cir. 2004).

The FAA provides for orders compelling arbitration when one party has refused to comply with an arbitration agreement. *Higgs v. Automotive Warranty Corporation of America*, Case No. 03-4381, 2005 WL 1313542 at*2 (6th Cir. May 13, 2005). Further, where the arbitration agreement provides that the arbitrator's decision is final and binding, courts have dismissed the case once it is determined that arbitration must be compelled. *Raasch*, 254 F.Supp.2d at 851(citing *Arnold v. Arnold Corp.-Printed Communications for Business*, 920 F.2d 1269, 1276 (6th Cir. 1990)). Finally, the party refusing to comply with an arbitration agreement

has the burden of proving that the claims at issue are unsuitable for arbitration. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 659 (6th Cir. 2003).

Before compelling arbitration, the Court must: (1) determine whether the parties agreed to arbitrate; (2) determine scope of that agreement; (3) if federal statutory claims are asserted, consider whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims are subject to arbitration, determine whether to stay the remainder of the proceedings pending arbitration. *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 392 (6th Cir. 2003), petition for *certiorari* filed April 11, 2005. Further, any doubts regarding arbitrability are to be resolved in favor of arbitration. *Id.*

"The determinative factor of whether an arbitration provision can be enforced to settle a dispute is the existence of a contract between the parties demonstrating that they intended for such to be the case." *Raasch*, 254 F.Supp.2d at 854. However, if an action could be maintained without reference to the arbitration agreement or relationship at issue, it is likely outside the scope of the arbitration agreement. *Fazio,* 340 F.3d at 395.

Even if an agreement to arbitrate is applicable to the claims brought by a plaintiff, certain provisions may render the arbitration agreement unenforceable. For example, if the sharing of costs of the arbitral forum effectively prevents the vindication of a plaintiff's statutory rights, those rights cannot be subject to mandatory arbitration under that agreement. *Morrison* 317 F.3d at 658.

The enforceability of a cost-sharing provision is decided on a case-by-case basis. *Id.* at 659. If the reviewing court finds that a specific cost-sharing provision would deter a substantial

number of similarly situated potential litigants from seeking to vindicate their statutory rights, the provision is unenforceable. *Id.* at 663.

When reviewing whether a cost-sharing provision would deter a substantial number of similarly situated potential litigants, the class of potential litigants should be defined by job description and socioeconomic background and should take the plaintiff's actual income and resources as representative of this larger class's ability to shoulder the costs of arbitration. *Id.* Also, when reviewing arbitration costs, the court should look to the average or typical cost. *Id.* at 664. Finally, the court should discount the possibilities that the plaintiff will not be required to pay arbitral fees because of ultimate success on the merits. *Id.*

In addition to considering the costs of arbitration, the court should consider the costs of litigation as the alternative to arbitration. *Id.* When considering the costs of litigation, the court should consider that, in many cases, employees who bring discrimination claims will be represented by attorneys on a contingency-fee basis and will thus face minimal costs in the judicial forum. *Id.* Having set forth the standard of review, the analysis next turns to the Motion To Compel.

## MOTION TO COMPEL ARBITRATION

The Parties do not dispute that both the Arbitration Agreement and the IDR policy exist. However, Haro argues that the IDR policy replaced the Arbitration Agreement. NCR responds that the Arbitration Agreement is applicable.

<u>Applicability</u>

The only basis offered by Haro for his conclusion that the IDR policy replaced the Arbitration Agreement is that, for purposes of this Motion, the Court must accept his factual

allegations as true. The Court does accept his factual allegation that the IDR policy exists as true. However, the Court need not accept Haro's legal conclusion that the IDR policy replaced the Arbitration Agreement as true.

Neither party disputes that fact that Haro entered into the Arbitration Agreement. The Arbitration Agreement addresses employment related disputes that arise during Haro's employment at NCR. Therefore, the parties to the Arbitration Agreement contemplated that it would be in effect during Haro's employment at NCR and would apply to employment related disputes that arose during Haro's employment at NCR.

The Arbitration Agreement also indicates that it cannot be modified unless such modification is signed by an NCR attorney. However, there is no evidence of a modification of the Arbitration Agreement that is signed by an NCR attorney. Finally, there are no provisions in the Arbitration Agreement for its termination except for the termination of Haro's employment and a modification signed by an NCR attorney.

Further, Ohio law provides that rescission, abandonment or other changes in the Arbitration Agreement must be by mutual consent of the parties and does not include unilateral termination or cancellation. *Transworld Systems, Inc. V. Ohio University*, Case No. 2003-01873-AD, 2003 WL 22905242 at *5 (Ohio Ct. Cl. Nov. 26, 2003). In this case, there is no evidence of any changes to the Arbitration Agreement that were made by mutual consent of the parties.

There is also no evidence that the IDR policy was intended to replace the Arbitration Agreement. The only information presented in this regard is the IDR policy itself.

While the IDR policy defines a process for resolving employment-related disputes that may arise during employment, the IDR policy contains no specific language rendering the

Arbitration Agreement as being modified or moot. In fact, the "Questions and Answers" attached to the IDR policy indicate that new hires will continue to sign an arbitration agreement form. This is an indication that NCR did not intend for the IDR policy to replace the Arbitration Agreement.

Therefore, based upon the evidence that is now before the Court, the Arbitration Agreement is in effect for employment related disputes that arose during Haro's employment and it was not replaced by the IDR policy. The Motion To Compel seeks mandatory arbitration pursuant to the Arbitration Agreement and the Arbitration Agreement between Haro and NCR is in effect so it is this Agreement that will be analyzed.

### The Arbitration Agreement

As determined hereinbefore, the Parties agreed to arbitrate "every possible claim (other than workers compensation claims or claims for benefits covered by the Employee Retirement Income Security Act) arising out of or relating in any way to my [Haro's] employment." All of Haro's claims arise out of or relate to his employment and are therefore subject to arbitration. Further, Haro's statutory discrimination claims are subject to resolution in a arbitral forum. *Morrison*, 317 F.3d at 665.

Haro argues that the IDR policy specifically exempts from arbitration any challenges to the terms of business/personnel practices etc. However, it is the Arbitration Agreement under which NCR seeks to compel arbitration and not the IDR policy. And, the Arbitration Agreement has no such language limiting the scope of arbitration. The Arbitration Agreement provides for arbitration of "every possible claim (other than workers compensation claims or claims for benefits covered by the Employee Retirement Income Security Act) arising out of or relating in

any way to my employment." All of Haro's claims relate to his employment, none are for workers compensation and none are for benefits covered by the Employee Retirement Income Security Act. Therefore, none of Haro's claims are exempted from the Arbitration Agreement and Haro may be compelled to arbitrate his claims under the Arbitration Agreement.

The analysis next turns to the validity of the Arbitration Agreement. Haro presents two arguments regarding validity that, while they may have been directed at the IDR policy, will also be reviewed with respect to the Arbitration Agreement.

### Cost-Sharing

Haro first argues that the Arbitration Agreement is unenforceable because the sharing of costs of the arbitral forum effectively prevents the vindication of a plaintiff's statutory rights. The Arbitration Agreement provides that "NCR and I will pay our own attorneys fees and split all other arbitration fees and expenses."

Cost-sharing provisions are evaluated on a case-by-case basis. The first step in the analysis of the cost-sharing provision is to define the class of potential litigants by job description and socioeconomic background. In this case, Haro presents evidence that the class of potential litigants is former NCR employees over the age of forty (40) who have been released from employment since January 2004 due to economic reasons and who were given a bonus and/or merit increase in 2004. (FAC ¶19.)

The Court is to then take the plaintiff's actual income and resources as representative of the larger class's ability to shoulder the costs of arbitration. As in *Morrison*, this Court expects that a potential litigant whose employment has been terminated must continue to pay for the necessities of life despite losing his or her primary, and most likely only, source of income, and

that a potential litigant will experience at least a brief period of unemployment. *See, Morrison*, 317 F.3d at 669. In this case, Haro claims that he currently receives no income and is paying living expenses out of his personal savings. (Haro Aff. ¶8.) Haro also presents evidence that his annual salary while employed at NCR was $73,713.00. (Haro Aff. ¶5.)

The Court next reviews the cost of arbitration. As a basis for viewing the cost, the Arbitration Agreement provides that the potential litigant will pay his or her own attorneys fees and will split all other arbitration fees and expenses with NCR.

Haro presents evidence from the American Arbitration Association ("AAA") that his cost of arbitration in this case would include a filing fee of $125. NCR would pay the remainder of the filing fee. The evidence presented by Haro also indicates that NCR would pay a $500 hearing fee for each day of hearing.

The evidence presented by Haro also indicates that, unless Haro chooses to pay a portion of the arbitrator's compensation, NCR would be required to pay such compensation. Since Haro has agreed to the Arbitration Agreement, he presumably has agreed to split the cost of the arbitrator's compensation. Therefore, Haro would be required to share in the cost of the arbitrator's compensation.

This evidence from the AAA is not refuted by NCR. Further, although Haro would not be required to use an attorney, if he elected to do so as contemplated by the Arbitration Agreement, attorneys fees would be an additional expense of arbitration for Haro.

*Morrison* refers to a "recent study" which found that an employee forced to arbitrate an $80,000 discrimination claim will incur costs that range from $4,350 to $11,625. *Morrison*, 317 F.3d at 669. Based upon the filing fee identified by Haro together with Haro's attorneys fees and

Haro's share of the arbitrator's compensation, Haro could easily incur arbitration costs for his complaints in the range identified in *Morrison*.

The cost of litigation must also be considered as a comparison to the cost of arbitration. In this case Haro's cost of litigation would be minimal because Haro's Counsel represents to the Court that no such costs are required to be paid by Haro if he litigates using the purported fee arrangement that he has with his Counsel.

Based upon the potential cost of arbitration as compared to the minimal cost of litigation, Haro has satisfied his burden of demonstrating that the cost-sharing provision in the Arbitration Agreement would deter a substantial number of similarly situated persons from attempting to vindicate their statutory rights using the Arbitration Agreement. Haro and the similarly situated persons have no income after being terminated and may be expected to incur arbitration costs in the range of $4,000 to $11,000. Thus, the cost-sharing provision in the Arbitration Agreement is unenforceable with regard to Haro's claims.

NCR argues that Haro was a high level employee with an annual salary of $73,313 which increases his burden to provide evidence that the arbitration costs are prohibitive. However, Haro is no longer an employee receiving an annual salary of $73,313. If Haro was still employed and refusing to arbitrate, his salary while employed would be relevant and this analysis might be different. However, Haro is no longer employed and, as the *Morrison* Court opined, recently terminated employees can be expected to experience at least a brief period without a salary.

## Severability

NCR next asks that, if the cost-sharing provision is found to be unenforceable, that it be severed from the Arbitration Agreement and that Haro be compelled to arbitrate under the

remaining provisions of the Arbitration Agreement. Ohio law permits the severance of a provision in an agreement to arbitrate if the agreement includes a clear severability provision. *Morrison*, 317 F.3d at 674-75.

In this case, the Arbitration Agreement includes a clear severability clause. The Arbitration Agreement provides that, "[i]f any portion of this Agreement is held to be void or unenforceable, the rest of the Agreement will remain in full force and effect." Therefore, the statement that, "NCR and I will pay our own attorneys fees and split all other arbitration fees and expenses" is severed from the Arbitration Agreement in this case.

NCR then indicates that, if the cost-sharing provision is severed, NCR will bear the costs of arbitration and Haro will only pay the lesser of the state or federal court filing fee in his jurisdiction. However, NCR does not address Haro's attorneys fees and requiring Haro to pay anything would amount to a failure to sever the cost-sharing provision.

The *Morrison* Court noted that, "to those who would complain that employers should not be required to pay all the costs of the arbitral forum in cases where the cost-splitting provision is held unenforceable, we respond that no one is requiring employers to pay any arbitration expenses at all. To the contrary, it is employers who choose to require their employees, as a condition of their employment, to enter into arbitration agreements. If employers find the costs of arbitration too great, they could simply end the practice of imposing mandatory arbitration agreements on their employees and litigate the statutory claims brought against them." *Morrison*, 317 F.3 at n.10. Therefore, the cost-sharing provision is severed from the Arbitration Agreement and Haro is not required to pay any arbitration fees and expenses.

Haro next argues that the Arbitration Agreement is unenforceable because the limits on discovery and the confidentiality requirements are inequitable. However, the Arbitration Agreement does not include any confidentiality requirement and necessary discovery is not limited. While the Arbitration Agreement identifies certain discovery limitations, it also provides that other discovery will be permitted if the arbitrator finds a compelling need to do so and the impossibility of conducting a fair hearing without the additional discovery outweighs the parties' desire for a quick and inexpensive resolution of the dispute. Therefore, the Arbitration Agreement is not inequitable unenforceable because of inequities.

## CONCLUSION

The Arbitration Agreement applies to the claims set forth in Haro's Amended Complaint. However, the cost-sharing clause in the Arbitration Agreement is unenforceable with regard to Haro's claims. Therefore, the cost-sharing agreement is severed and the remainder of the Arbitration Agreement is enforceable. Haro is hereby compelled to arbitrate his claims under the Arbitration Agreement with the statement that "NCR and I will pay our own attorneys fees and split all other arbitration fees and expenses" excluded from the Agreement.

The Arbitration Agreement also provides that the arbitration is "final and binding." Therefore, because the arbitration is binding, the Court will play no meaningful role in the resolution of the claims and the claims are, therefore, dismissed in their entirety. *See, Arnold*, 920 F.2d at 1276. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-Sixth day of July, 2005.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record